ED T. GRIFFIN, D/B/A ED T. GRIFFIN BUILDERS, Plaintiff v. JAMES H. SWEET, JR. AND WIFE, DEBRA H. SWEET, Defendants

No. COA99-95

(Filed 7 March 2000)

**Pleadings— Rule 11 sanctions—time for filing motion**

> By waiting over thirteen months after our Supreme Court denied defendants' petition for discretionary review, plaintiff failed to file his motion for N.C.G.S. § 1A-1, Rule 11 sanctions within a reasonable time of detecting the alleged impropriety because the record reveals plaintiff was put on notice of any alleged sanctionable conduct when defendants filed an answer to the supplemental complaint, when the trial court granted summary judgment in favor of plaintiff, and when the Court of Appeals affirmed the summary judgment.

Appeal by defendants from judgment entered 31 July 1998 by Judge Quentin T. Sumner in Halifax County Superior Court. Heard in the Court of Appeals 3 January 2000.

*Dill, Fountain, Hoyle, Pridgen, Stroud & Naylor, L.L.P., by William S. Hoyle, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by Paul K. Sun, Jr. and Hampton Dellinger, for defendants-appellants.*

WALKER, Judge.

Defendants Sweet contracted with plaintiff Ed T. Griffin, d/b/a/ Ed T. Griffin Builders, in 1989 to construct a house in Halifax County. Defendants subsequently obtained a construction loan through Centura Bank, which required plaintiff and his wife to sign a personal guaranty for the construction loan. Plaintiff began work on the residence in early 1990, but during that summer, a disagreement arose between the parties regarding the construction. Defendants notified Centura Bank that plaintiff was no longer authorized to make construction draws on the account. Plaintiff then filed a notice of lien on the real property and a complaint seeking payment for the work completed. Defendants filed an answer and counterclaim, alleging that plaintiff failed to construct the house in accordance with the contract, to comply with the State building code, and to perform the construction in a workmanlike manner.

The trial began on 25 January 1993. On the next day, the trial judge interrupted the testimony and urged the parties to settle the case. Thereafter, settlement negotiations were held, and defendants had contact with their attorneys at various times during the process. After a settlement was reached, both of the parties and their attorneys returned to the courtroom where the trial court reviewed the proposed terms of the settlement. The trial judge stated, "I am going to recite what I consider to be the settlement, and if it varies from what you perceive the settlement to be, counsel, you should inform me." The trial judge then read into the record his understanding of the settlement agreement. The attorneys for both parties were given an opportunity to add any additional terms which had been omitted and to object to any provisions. Although some terms were added, no other objections were made by either party.

Under the settlement agreement, plaintiff agreed to release the lien on defendants' property and to pay defendants $10,000—$5,000 due within ten days and $5,000 due on or before 1 June 1993. In exchange, defendants agreed to return plaintiff's ladder within ten days and to indemnify plaintiff from any payment that he might be required to make to Centura Bank as a result of plaintiff's guaranty of the construction loan. The parties agreed to sign a consent judgment which was to be held by plaintiff's attorney until the conditions of the settlement agreement were met.

Plaintiff canceled the lien on defendants' property and tendered the two $5,000 installment payments within the designated time.

Although the checks were accepted by defendants' attorney, they were never negotiated by defendants. Defendants returned plaintiff's ladder but refused to indemnify him for the construction loan guaranty.

By the end of October 1993, defendants' attorney notified plaintiff that defendants did not intend to comply with the settlement. Plaintiff then filed a supplemental complaint against defendants on 16 November 1993 for breach of the settlement agreement alleging that there had been an accord and satisfaction. Defendants retained new counsel, Malvern F. King, Jr., who returned the non-negotiated checks to plaintiff's attorney and filed an answer to the supplemental complaint on 7 December 1993. In their answer, defendants argued that they did not understand the indemnification provision.

Plaintiff filed a motion for summary judgment, and defendants filed a response on 19 January 1994, arguing that they never understood the settlement agreement and did not agree to the indemnification provision. After hearing the arguments of counsel, the trial court granted summary judgment to plaintiff on 28 January 1994. Defendants' attorney then withdrew, and defendants retained attorney Charles T. Francis to appeal the trial court's entry of summary judgment. This Court affirmed summary judgment in favor of plaintiff in an opinion filed on 5 September 1995. *See Griffin v. Sweet*, 120 N.C. App. 166, 461 S.E.2d 32 (1995). Defendants then filed a petition for rehearing, which was denied by this Court and a petition for discretionary review to our Supreme Court, which was also denied by an order filed 22 February 1996. *See Griffin*, 342 N.C. 655, 467 S.E.2d 712 (1996).

On 27 March 1997, plaintiff filed a motion in the cause seeking sanctions under N.C. Gen. Stat. § 1A-1, Rule 11 against defendants and their attorneys, King and Francis. A hearing was held on 27 July 1998, after which the trial court imposed sanctions against defendants Sweet ordering them to pay $15,000 and costs. The trial court found that there was no basis for the imposition of sanctions against attorneys King and Francis.

Defendants assign as error the trial court's judgment and order: (1) granting plaintiff's Rule 11 motion for sanctions since it was not filed within a reasonable amount of time; (2) sanctioning them for appellate conduct under Rule 11 instead of Rule 34; and (3) sanctioning them for their responsive pleadings since the record does not

support the trial court's findings that the pleadings were not well grounded in fact or were interposed for an improper purpose.

Defendants contend that plaintiff failed to file his Rule 11 motion within a reasonable time; therefore, it is barred. Although Rule 11 does not specify a time limit for filing a sanctions motion, this Court has held that "a party should make a Rule 11 motion within a reasonable time after he discovers an alleged impropriety." *See Rice v. Danas, Inc.*, 132 N.C. App. 736, 514 S.E.2d 97 (1999) and *Renner v. Hawk*, 125 N.C. App. 483, 481 S.E.2d 370, *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997). A trial court's order imposing Rule 11 sanctions is reviewable *de novo* under an objective standard. *Id.* Plaintiff argues that this Court, in *Taylor v. Collins*, 128 N.C. App. 46, 493 S.E.2d 475 (1997), found that the imposition of sanctions was not untimely although more than two years had lapsed between the entry of summary judgment and the filing of the motion for sanctions. Defendants, however, contend that the holding in *Taylor* only establishes that trial courts can entertain a motion for sanctions after the case has been appealed. In *Taylor*, this Court found that "respondents have pointed to no authority which suggests that it was error for the trial court to entertain a motion for sanctions after their appeal to this Court." *Id.* at 49, 493 S.E.2d at 477. However, this Court in *Taylor* did not address whether the motion for sanctions was brought within a reasonable time after summary judgment was affirmed by this Court. Furthermore, defendants argue that *Taylor* is factually distinguishable since the motion for sanctions in that case was filed only five months after our Supreme Court denied discretionary review and two months after our Supreme Court dismissed the plaintiff's motion for reconsideration of the petition for discretionary review.

Defendants further rely on the recent decision of *Rice v. Danas, Inc.*, 132 N.C. App. 736, 514 S.E.2d 97 (1999), where the defendant waited almost seven months after judgment was entered before filing its motions for sanctions. In *Rice*, a jury verdict was entered on 5 December 1996. *Id.* On 10 December 1996, the defendant moved to recover costs; however, there was no further action in the case until 30 June 1997 when the defendant moved to amend its motion for costs and filed a separate motion for Rule 11 sanctions. *Id.* This Court stated:

Defendant obviously formed an opinion of the alleged impropriety of plaintiff's pleadings long before the filing of its motion for sanctions. Indeed, the suspect pleadings were signed months

before trial by plaintiff and/or her counsel. Yet, no motion for sanctions was filed until well after the verdict of the jury was rendered.

*Id. at 741*, 514 S.E.2d at 101. Therefore, this Court found as a matter of law that the motion for Rule 11 sanctions was not filed within a "reasonable time of detecting the alleged improprieties." *Id.*

In *Renner v. Hawk*, 125 N.C. App. 483, 491, 481 S.E.2d 370, 375 (1997), the defendant asserted that "the alleged impropriety became apparent not when the complaint was filed, but only during the course of discovery." The defendant in *Renner* was deposed on 23 May 1995, after which settlement discussions occurred. *Renner*, 125 N.C. App. 483, 481 S.E.2d 370. Plaintiff was scheduled to be deposed on 11 July 1995; however, on 10 July 1995, plaintiff moved to voluntarily dismiss the action without prejudice. *Id.* One month later, the defendant filed a motion for sanctions, and this Court found that the defendant's motion for Rule 11 sanctions was filed within a reasonable time. *Id.*; *See also Turner v. Duke University*, 325 N.C. 152, 381 S.E.2d 706 (1989) (holding that the motion for sanctions was timely since it was filed prior to trial, on 17 July 1987 and was based on conduct alleged to have occurred during discovery, between May and July 1987).

After hearing plaintiff's motion for sanctions, the trial court here made findings, which include the following:

7. That the record in this case, including pleadings filed on behalf of the Defendants, James H. Sweet, Jr., and wife Debra H. Sweet, and a transcript of a hearing on November 5, 1993, before Judge Robert Hobgood indicate that the Plaintiff fully complied with the terms of the settlement announced by Judge Butterfield; after the said compliance by the Plaintiff, the Defendants refused to comply with the terms of the settlement and, in fact, repudiated the settlement and refused to indemnify the Plaintiff with respect to the guaranty on the construction loan, and gave as their reasons for refusing to comply with the settlement that they were not included in the settlement negotiations by their trial attorneys and did not understand the terms of the settlement, including their agreement to indemnify the plaintiff, even though they were present in Court and the presiding Judge announced their agreement to indemnify the Plaintiff against any losses incurred as a result of the guaranty agreement executed by the Plaintiff and his wife.

8. Subsequent to the settlement announced in this Court [in] January, 1993, Defendants discharged their trial attorneys, Michael Strickland and William Black, and employed Malvern F. King, Jr., to be their attorney of record; that subsequent to Mr. King's appearance in the case, the Plaintiff filed a Motion for Leave to File Supplemental Pleadings to allege accord and satisfaction, and the Defendants, through counsel King, filed a Response to said Motion; that said Plaintiff's Motion for Leave to File Supplemental Pleadings came on for hearing on or about November 5, 1993 before Judge Robert Hobgood, at which hearing the Defendants['] trial attorneys, Strickland and Black testified and the Defendants, James H. Sweet, Jr., and wife Debra H. Sweet testified; after said hearing, Judge Hobgood entered an Order allowing the Plaintiff to file supplemental pleadings and the Plaintiff did, in fact, file a supplemental Complaint to which the Defendants, through counsel King, filed a Supplemental Answer.

The trial court then concluded in part:

3. The pleadings filed by and on behalf of the Defendants, James H. Sweet, Jr., and wife Debra H. Sweet, were not factually sufficient and failed the factual certification required by N.C. Gen. Stat. § 1A-1, Rule 11.

4. That the pleadings, including the Defendants['] Supplemental Answer to the Plaintiff's Supplemental Complaint, the brief filed on the Defendants['] behalf of Summary Judgment Motion and other documents filed by the Defendants, were filed for improper purpose.

Thus, it is apparent from the record in this case that plaintiff was put on notice of any alleged sanctionable conduct when defendants filed an answer to the supplemental complaint on 7 December 1993 and again when the trial court granted summary judgment for plaintiff on 28 January 1994. However, we are not suggesting that plaintiff's motion for Rule 11 sanctions should have been filed at the summary judgment stage.

Additionally, when this Court affirmed summary judgment in plaintiff's favor on 5 September 1995, that decision only reinforced plaintiff's position that an agreement between the parties had been reached in 1993. Therefore, based on the rationale of *Rice v. Danas, Inc.*, *supra*, we conclude that by waiting over thirteen months after

our Supreme Court denied defendants' petition for discretionary review, plaintiff failed to file his motion for Rule 11 sanctions within a reasonable time of detecting the alleged impropriety. Based on this finding, we need not address defendants' remaining assignments of error.

Reversed.

Chief Judge EAGLES and Judge WYNN concur.